**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ABELINO SANCHEZ ARECHIGA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1120-R** |
| | ) | |
| **MARKWAYNE MULLIN et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Abelino Sanchez Arechiga, a noncitizen[1] and citizen of Mexico, proceeding with counsel, filed a Petition for Writ of Habeas Corpus challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement (ICE). (ECF No. 1). United States District Judge David L. Russell referred this matter to the undersigned magistrate judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Respondents filed a response. (ECF Nos. 3).

For the reasons set forth below, the undersigned recommends that the Court grant the Petition, in part and order Respondents to provide Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven business days or otherwise to release him if there is no hearing within that time.

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I. BACKGROUND

Petitioner, a citizen of Mexico, entered the United States in 2011 without inspection. (ECF No. 1:2). On May 6, 2026, Immigrations Customs and Enforcement (ICE) officials arrested Petitioner after he was taken into custody by local authorities in Duncan, Oklahoma, following a traffic stop. (ECF No. 1:2). DHS officials placed Petitioner into removal proceedings before the Immigration Court pursuant to 8 U.S.C. § 1229a through the issuance of a Notice to Appear and charged him with being inadmissible under 8 U.S.C. §§ 1182(a)(6)(A)(i) as someone who entered the United States without having been admitted or paroled. (ECF No. 7-1). Petitioner was subsequently transported into the custody of ICE officials and he is currently detained in the Diamondback Correctional Facility without having been afforded the opportunity for a bond hearing.[2]

## II. PETITIONER'S CLAIMS

Petitioner asserts two claims for relief:

- **Count I: Violation of the Immigration and Nationality Act**. Petitioner alleges his detention under § 1225(b)(2) is unlawful and violates the INA because that provision does not apply to those, like him, who previously entered the country and have been residing in the United States before being apprehended and placed in removal proceedings.
- **Count II: Violation of the Fifth Amendment.** Petitioner alleges his detention without notice or opportunity to be heard violates his Fifth Amendment Right to Due Process.

(ECF No. 1:20-23).

---

[2] *See* https://locator.ice.gov/odls/#/results (last visited July 9, 2026).

Petitioner asks the Court to immediately release him, or, in the alternative, order Respondents to provide him with an individualized bond hearing, at which the government bears the burden of proof. (ECF No. 1:23-24). Petitioner also requests declaratory relief and an award of attorney fees and costs under the Equal Access to Justice Act ("EAJA").[3] (ECF No. 1:23-24).

## III. STANDARD OF REVIEW

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. PETITIONER IS ENTITLED TO A BOND HEARING UNDER 8 U.S.C. §1226

In order for the Court to determine whether Petitioner's current detention without a bond hearing violates the law, the Court must first determine what statute controls his detention. Under the Immigration and Nationality Act ("INA"), detention of aliens who are "applicants for admission"[4] and "seeking admission" is mandatory under 8 U.S.C. § 1225(b)(2)(A). By contrast, § 1226(a) provides for the arrest of aliens on a warrant and

---

[3] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B). Thus, the Court need not address this request at this juncture.

[4] 8 U.S.C. § 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13).

grants ICE the discretion to continue detention of the alien or to release the alien on bond.[5] On June 30, 2026, the Tenth Circuit decided *Santillan Quiroz v. Mullin*, --- F.4th ---, 2026 WL 1876709. The court held "that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Id.* at *5. The court reasoned based on the statutory text and context that:

> once a noncitizen has entered unlawfully, no amount of legal maneuvering allows him to go back in time and make his initial entry lawful. The only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border. Since § 1225(b)(2)(A) applies only to those seeking admission, § 1225(b)(2)(A) is likewise limited to the border.

*Id.* at *7. This statutory interpretation is binding on this Court and applicable to Petitioner's factual circumstances.

Based on the Tenth Circuit's decision in *Santillan Quiroz*, the undersigned concludes that Petitioner, who was detained in the interior of the United States after entering without admission, is subject to detention under § 1226(a). However, he has not been granted the bond hearing provided in that statute. Thus, Petitioner has shown

---

[5] The regulations accompanying the statute explain the various levels of review for a bond determination. An ICE officer makes the initial detention or release determination, and the alien bears the burden of "demonstrat[ing] to the satisfaction of the officer that . . . release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). If the officer determines the alien should be detained, the alien can seek review of that decision at a bond hearing before an immigration judge. Id. § 236.1(d)(1). An immigration judge's decision to detain may be further appealed to the Board of Immigration Appeals ("BIA"). Id. § 236.1(d)(3). *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

that he is in custody in violation of the laws of the United States, and he is entitled to habeas relief. 28 U.S.C. § 2241(c)(3). A bond hearing is the appropriate remedy. *Santillan Quiroz*, 2026 WL 1876709 at *17 n.13.

## V. PETITIONER'S CURRENT DETENTION ALSO VIOLATES DUE PROCESS

Petitioner alleges that "Respondents' detention of Petitioner without any individualized bond redetermination hearing violates his right to due process under the Fifth Amendment." (ECF No. 1:23). Petitioner is correct.

The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is well established that the Due Process Clause applies to non-citizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: (1) is there a protected liberty interest, and (2) if so, what procedures are necessary to ensure deprivation of that protected liberty interest accords with due process. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Indeed, "due process requires that, whenever the Government detains somebody, it must have a good reason for doing so." *Santillan Quiroz*, 2026 WL 1876709, at *16.

As a non-citizen facing discretionary detention or release while removal proceedings are pending, Petitioner has a liberty interest in freedom from immigration detention and it is necessary to afford him the opportunity to be heard regarding his

release to ensure that any deprivation of that protected liberty interest accords with due process. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (citation modified). The bond hearing process, codified at § 1226(a) and its related regulations, provides such an opportunity to be heard. Thus, Petitioner's procedural due process rights have been violated by Respondents' decision to detain him under § 1225 without a bond hearing.

Although finding it unnecessary to determine whether the government's position regarding the application of § 1225(b)(2)(A) is unconstitutional, *Santillan Quiroz*, 2026 WL 1876709, at *17, the Tenth Circuit observed that "[t]he mandatory detention of potentially millions of noncitizens without the potential for bond raises" "serious constitutional concerns." *Id.* at *16. District courts in this Circuit have had occasion to directly address the issue, holding:

> Because this Court holds that § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ [immigration judge]. Having erroneously concluded that Petitioner was mandatorily detained under § 1225, the IJ in Petitioner's case declined to make an individualized assessment of whether Petitioner posed any danger to the community, threatened national security, or was at risk of flight. Thereafter, Petitioner's continued detention without the bond hearing that should have been provided to him pursuant to § 1226 constitutes an ongoing violation of his constitutional right to due process.

*Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025) (internal citation omitted); *see also Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1282 (D.N.M. 2026) ("Classifying Petitioner under § 1225 has . . . deprived him of due process by denying

him the opportunity to be heard at [a bond] hearing.") (citation modified); *Facio v. Baltazar*, No. 25-CV-03592-CYC, 2025 WL 3559128, at *3 (D. Colo. Dec. 12, 2025) ("[T]he Court agrees with other courts that have, against substantially similar factual backgrounds, concluded that detention without a bond hearing amounts to a due process violation.") (citation modified); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. Aug. 29, 2025) ("The discretionary bond framework under Section 1226(a) requires a bond hearing to make an individualized custody determination – a hearing the IJ did not conduct. Therefore, without first evaluating Lopez-Campos' risk of flight or dangerousness, his detention is a violation of his due process rights."), *aff'd,* 175 F.4th 713, 734 (6th Cir. 2026) ("find[ing] no reason to disturb" the district courts' holdings "that the government's detention of Petitioners without bond under § 1226(a) was a deprivation of liberty that violated Petitioners' due process rights").

Although Petitioner asks the Court to immediately release him from custody, the undersigned finds that the appropriate remedy for the violation of his due process rights is the same as the remedy for violation of his statutory rights – the bond hearing contemplated by § 1226(a).

## VI. THE REMEDY OF A BOND HEARING SHALL COMPORT WITH DUE PROCESS

It is clear that Petitioner, now properly classified under § 1226(a), has the statutory and Constitutional right to be heard regarding his release through all the opportunities set forth in the INA and its regulations. To date, he has not been provided with a bond hearing before an immigration judge, and this Court's grant of habeas relief must order

such a hearing to take place. *Santillan Quiroz*, 2026 WL 1876709, at *17, n.13. Petitioner requests that if the Court orders a bond hearing, the Court should further order that the Government should be required to carry the burden of proof to establish by clear and convincing evidence flight risk or danger to the community to justify his continued detention. *See supra*. Indeed, the undersigned finds that ordering a bond hearing, without more, does not ensure that Petitioner will receive complete and meaningful habeas relief. If the procedures used in the hearing are insufficient to protect non-citizens from erroneous deprivations of liberty, merely ordering a bond hearing will lead to further violations of their due process rights. The Court must investigate what it means to receive a § 1226(a) bond hearing as administered by immigration judges under current BIA precedent, specifically as to the burden and quantum of proof, in order to determine whether those procedures permit a non-citizen to be heard "in a meaningful manner," *Mathews*, 424 U.S. at 333, and thereby comport with due process.

The Court is not acting beyond its jurisdiction or its authority in making such an inquiry. First, even though under the INA, "a district court has no jurisdiction to consider a habeas petitioner's challenge to the decision to either grant or deny bond," *Kumar v. De Anda-Ybarra*, No. CIV-26-164-R, 2026 WL 753944, at *2 (W.D. Okla. Mar. 17, 2026) (citing 8 U.S.C. § 1226(e)), the Court retains "habeas jurisdiction over constitutional claims or questions of law" relating to the bond hearing. *Hernandez Casallas v. Jones*, No. CIV-26-53-J, 2026 WL 324646, at *2 (W.D. Okla. Feb. 6, 2026). *See Demore v. Kim*, 538 U.S. 510, 517 (2003) (The "clear text [of § 1226(e)] does not bar respondent's constitutional challenge . . . ."). Second, Congress has granted courts the authority to

"summarily hear and determine the facts" when considering an application for a writ of habeas corpus and to "dispose of the matter as law and justice require." 28 U.S.C. § 2241. And the Supreme Court has advised that "[t]he very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris v. Nelson*, 394 U.S. 286, 291 (1969); *see also Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (observing that habeas is "an adaptable remedy" and "its precise application and scope change[s] depending upon the circumstances"); *Schlup v. Delo*, 513 U.S. 298, 319 (1995) ("[H]abeas corpus is, at its core, an equitable remedy."); *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (holding that federal courts have "broad discretion in conditioning a judgment granting habeas relief").

As set forth fully below, the undersigned finds that bond hearings as they are currently administered by ICE do not comport with due process and that substitute procedures should be ordered, namely shifting the burden of proof to the Government to justify a non-citizen's detention.[6]

[6] *But see Singh v. Grant*, No. CIV-26-279-J, 2026 WL 1035100, at *2 (W.D. Okla. Apr. 16, 2026) (finding the issue of burden shifting "premature" and "not ripe for adjudication" because "[a]t this point in time, no immigration judge has conducted a bond hearing in Petitioner's case, much less allocated the burden of proof or applied the particular facts of this case to that evidentiary framework. Accordingly, the Court declines to issue an advisory opinion instructing the Immigration Judge to apply a particular burden of proof."); *Singh v. Figueroa*, No. CIV-26-600-R, 2026 WL 1181699, at *1 n.2 ("[T]he Court declines to specify or alter the burden of proof at this stage.") (citation omitted).

### A. Bond Hearings Under Current BIA Precedent

Section 1226(a) does not specify who bears the burden of proving a non-citizen's eligibility for bond or what burden of proof applies. Indeed, the only place in which the burden is addressed is in the regulation pertaining to the custody determination by the arresting ICE officer, 8 C.F.R. § 236.1(c)(8). *See supra*, footnote 5. However,

> the BIA . . . adopted that standard for section 1226(a) bond hearings before an IJ. . . . *See Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112 (B.I.A. 1999); *Matter of Guerra*, 24 I. & N. Dec. [37, 38 (B.I.A. 2006)].
>
> Accordingly, under current BIA precedent, a noncitizen detained under section 1226(a) must demonstrate "to the satisfaction of the Immigration Judge that he or she merits release on bond," *Matter of Guerra*, 24 I. & N. Dec. at 40, "even though section [1226(a)] does not explicitly contain such a requirement." *Matter of Adeniji*, 22 I. & N. Dec. at 1113. To do so, the noncitizen must prove that he or she is neither a danger to the community nor a flight risk. *See, e.g., Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804 (B.I.A. 2020). In contrast, the government "need not show anything to justify incarceration for the pendency of removal proceedings, no matter the length of those proceedings." *Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020).

*Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021). Thus, the bond hearings as currently administered provide non-citizens with some procedural protections against a deprivation of liberty. But those protections must be assessed against the requirements of the Constitution.

### B. The Government Should Bear the Burden of Proof

Neither the Supreme Court nor the Tenth Circuit has directly addressed whether requiring the non-citizen to bear the burden of proving that he is neither a danger to the

community nor a flight risk at a § 1226(a) bond hearing violates due process.[7] There is a split among the Circuits that have considered the question. The First Circuit has squarely held that at a § 1226(a) bond hearing, due process requires the government to bear the burden of proving the alien's dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. *Hernandez-Lara*, 10 F.4th at 39-40. The Second Circuit has similarly held that when an alien is subject to prolonged incarceration under § 1226(a), the appropriate remedy is a bond hearing at which the government bears the burden of proving dangerousness or flight risk by clear and convincing evidence. *Velasco Lopez v. Decker*, 978 F.3d 842, 855-57 (2d Cir. 2020).

In contrast, the Ninth Circuit has held that due process does not require the government to bear the burden of proving dangerousness or flight risk when a non-citizen has been "subject to § 1226(a) and its bond determination processes from the onset of his detention." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1211-12 (9th Cir. 2022). The Fourth Circuit and Third Circuit are substantially in accord. *See Miranda v. Garland*, 34 F.4th 338, 366 (4th Cir. 2022) (concluding "the current procedures used for detention under § 1226(a) satisfy due process" and thus burden shifting was not required); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278-79 (3d Cir. 2018) (finding that non-citizen was "granted meaningful process prior to filing his habeas petition" when he was "afforded a prompt bond hearing, as required by § 1226(a) and its implementing

---

[7] The Tenth Circuit stated, "[d]ue process requires that, whenever the Government detains somebody, it must have a good reason for doing so," *Santillan Quiroz*, 2026 WL 1876709, at *16, implicitly indicating that the burden is on the government to justify detention, not on the non-citizen to justify release.

regulations" at which he bore the burden of proof, and "perceive[ing] no problem with [the] distinction" between § 1226(a) placing the burden on the detainee and § 1226(c) shifting the burden to the government in certain circumstances).

The undersigned recommends that this Court follow the thorough and well-reasoned analyses of the First and Second Circuits, both of which evaluated the procedures for § 1226(a) bond hearings under the Supreme Court's three-factor balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The *Mathews* factors aid courts in determining whether procedural protections meet the Constitutional requirements of due process. The undersigned agrees that all three *Mathews* factors support affording Petitioner a bond hearing at which the Government, rather than the non-citizen, bears the burden of proof of establishing risk of flight and dangerousness.

The first *Mathews* factor is "the private interest that will be affected." 424 U.S. at 335. Here, "[f]reedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty" interest in the Fifth Amendment's Due Process Clause. *Zadvydas*, 533 U.S. at 687-88. "In our society liberty is the norm, and detention . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Second Circuit has emphasized that for a non-citizen subject to § 1226(a) (as opposed to § 1226(c)), immigration detention was "not the result of a criminal adjudication," but "he was held alongside criminally charged defendants and those serving criminal sentences. The deprivation he experienced while incarcerated was, on any calculus, substantial. He was locked up in jail. He could not maintain employment or see his family or friends or others outside normal visiting hours. The use of a cell phone

was prohibited, and he had no access to the internet or email and limited access to the telephone." *Velasco Lopez*, 978 F.3d at 851-52 (internal citation omitted). *See also Hernandez-Lara*, 10 F.4th at 28 ("Hernandez was incarcerated alongside criminal inmates at the Strafford County Jail for over ten months. During that time, she was separated from her fiancé and unable to maintain her employment. But for the relief ordered in this action, she would still be incarcerated more than two years after the jailor first locked the door behind her. There is no question that Hernandez suffered a substantial deprivation of liberty.") (internal citation omitted). Thus, the first factor weighs heavily in favor of procedures that carefully protect Petitioner's substantial interest in being free from quasi-criminal detention.

The second *Mathews* factor is "the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. "Procedural due process rules are shaped by the risk of error inherent in the truth-finding process." *Velasco Lopez*, 978 F.3d at 852 (citing Mathews, 424 U.S. at 344). The First Circuit observed five reasons that "a detainee often starts out behind the eight ball in a bond proceeding, and the opportunities for prejudicial error abound" due to the way that § 1226(a) hearings are conducted under current BIA precedent

> [1] noncitizens have no right to be provided with counsel in immigration proceedings and very often cannot obtain counsel on their own, particularly if they are detained;
>
> [2] detained individuals will likely experience difficulty in gathering evidence on their own behalf;

> [3] noncitizens subject to immigration detention often lack full proficiency in English;
>
> [4] immigration law and procedures and the particular preferences of individual IJs are likely much better known to government representatives than to detainees; and
>
> [5] proving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern.

*Hernandez-Lara*, 10 F.4th at 30-31 (citation modified); *see also Velasco Lopez*, 978 F.3d at 853 (observing that the ability of a detained non-citizen to obtain evidence for the bond hearing is constrained, especially compared to the "substantial resources" of the government in the form of "computerized access to numerous databases and to information collected by DHS, DOJ, and the FBI, as well as information in the hands of state and local authorities . . . [and] broad regulatory authority to obtain it"). Thus, the second factor weighs heavily in favor of requiring substitute procedures that would protect Petitioner from the risk of the erroneous deprivation of his liberty, such as shifting the burden of proof from the non-citizen to the Government.

The final *Mathews* factor is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. "The prompt execution of removal orders is a legitimate governmental interest, which detention may facilitate." *Hernandez-Lara*, 10 F.4th at 32. However, the government has no legitimate interest "in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight[,] [and] . . . shifting the burden of proof to the Government to justify continued detention promotes the Government's interest . . . in minimizing the enormous impact of

incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854. Indeed, "limiting the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention." *See Hernandez-Lara*, 10 F.4th at 33 (also noting the "substantial societal costs" of unnecessary detention, which "separates families and removes from the community breadwinners, caregivers, parents, siblings and employees"). "In short, given the risk that the current procedures lead to many instances of needless detention, entailing substantial social and financial costs, the public interest in placing the burden of proof on the detainee is uncertain at best, and may well be negative." *Id.* Thus, the third factor also supports shifting the burden of proof to the government.

"In sum, the balance of the *Mathews* factors weighs in favor of [Petitioner]: The private interest affected is commanding; the risk of error from placing the burden of proof on the noncitizen is substantial; and the countervailing governmental interest is comparatively slight." *Id.* (citation modified).

Multiple district judges in this Circuit have come to the same conclusion. *See*, *e.g.*, *Requejo Roman*, 816 F. Supp. 3d at 1284 (Judge Urias considering the *Mathews* factors, and concluding that "due process requires that [petitioner] be provided a bond hearing at which the Government bear the burden of proving that Petitioner is not a flight risk or a danger to the community."); *Mieles-Parraga v. Bondi*, No. 2:26-CV-00646-KG-JHR, 2026 WL 776489, at *2 (D.N.M. Mar. 19, 2026) (Chief Judge Gonzales utilizing same analysis); *Lopez-Romero v. Lyons*, No. 2:25-CV-01113-MIS-JHR, 2026 WL 92873, at *1 (D.N.M.

Jan. 13, 2026) (Judge Strickland utilizing same analysis); *Abanil v. Baltazar*, No. 25-CV-4029-WJM-STV, 2026 WL 100587, at *8 (D. Colo. Jan. 14, 2026) (finding that in the District of Colorado, "the weight of authority. . . is clear: it is the Government's burden to justify a noncitizen's continued detention at a bond hearing") (collecting cases); *Peña Becerra v. Sparks*, No. 2:26-CV-00212-JNP-DBP, 2026 WL 915439, at *7 (D. Utah Apr. 3, 2026) (finding petitioner met his burden to show a deprivation of his rights by his unlawful detention, ordering petitioner's release, and ordering that if respondents "seek to re-detain him, they must provide him with notice and a pre-deprivation hearing, in which the government bears the burden of establishing by clear and convincing evidence that [he] is a flight risk or danger to the community").

The undersigned recommends this Court join these courts and order that Petitioner be provided a bond hearing at which the Government bears the burden of proof to justify detention by showing he is a risk of flight or danger to the community.

### C. The Government Should be Required to Establish Flight Risk and/or Dangerousness by Clear and Convincing Evidence

Part and parcel of considering who bears the burden of proof is a determination of which standard of proof should apply.

> The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication. The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

*Addington v. Texas*, 441 U.S. 418, 423 (1979) (citation modified). "The Supreme Court has consistently held the Government to a standard of proof higher than a preponderance

of the evidence where liberty is at stake, and has reaffirmed the clear and convincing standard for various types of civil detention." *Velasco Lopez*, 978 F.3d at 856 (citing Addington, 441 U.S. at 426, 432-33 (upholding the clear and convincing standard for civil confinement of individuals with severe mental illnesses); *Salerno*, 481 U.S. at 751 (noting that pretrial detention is permitted "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identifiable and articulable threat to an individual or the community"); *Foucha v. Louisiana*, 504 U.S. 71, 75-76 (1992) (requiring the same standard for involuntary civil commitment); *United States v. Comstock*, 560 U.S. 126, 130- 31 (2010) (noting the same standard in upholding the constitutionality of a federal statute which permits continued confinement of a mentally ill, sexually dangerous prisoner beyond a date that the prisoner would otherwise be released). *But see Hernandez-Lara*, 10 F.4th at 41 (holding that "due process requires the government to either (1) prove by clear and convincing evidence that [the non-citizen] poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk").

District courts in this Circuit have adopted the clear-and-convincing-evidence standard when shifting the burden to the government for § 1226(a) bond hearings. *See e.g., Martinez Escobar v. Baltazar,* No. 26-cv-296-NYW, 2026 WL 503313, at *5 (D. Colo. Feb. 24, 2026) (collecting cases in District of Colorado imposing clear and convincing standard and imposing same); *Requejo Roman*, 816 F. Supp. 3d at 1284 ("[T]he standard of proof the Government must meet is one of clear and convincing evidence.") (citation modified). The undersigned also finds that requiring this standard is consistent with the

Tenth Circuit's recent decision which states that the government "must have a good reason" for detaining anybody and "if the detention is civil and nonpunitive, like the immigration detention here, that reason must rise to the level of a 'strong special justification.'" *Santillan Quiroz*, 2026 WL 1876709, at *16 (quoting *Zadvydas*, 533 U.S. at 690).

### D. Conclusion

Petitioner's rights under § 1226(a) and the Due Process Clause have been violated by his unlawful detention without the opportunity for a bond hearing. This Court can implement its flexible habeas jurisdiction to protect him from further erroneous deprivation of his fundamental liberty interest by providing adequate procedural protections. A bond hearing at which the Government bears the burden of proof to establish flight risk and/or dangerousness by clear and convincing evidence is an appropriate remedy.

## VII. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Court **GRANT, IN PART,** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within seven business days or otherwise release Petitioner if he has not received a lawful bond hearing within that period. It is further recommended that the Court order that at the bond hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk and/or a danger to the community in order to justify continued detention.

Finally, the Court should order Respondents to certify compliance by filing a status report within seven business days of the Court's order.

The parties may object to this Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Any objection must be filed not later than **July 16, 2026**. If a party wishes to respond to the other party's objections, such response must be filed not later than **July 20, 2026**. *See id*. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VIII. STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on July 9, 2026.

Shon T. Erwin

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE